UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAHLE THERMAL AND FLUID SYSTEMS
MANUFACTURING MANAGEMENT, INC., et al.,

Plaintiffs,

-against-

STARK MANUFACTURING, LLC,

Defendant.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  1/9/2026
```

26-CV-00083 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Plaintiffs MAHLE Thermal and Fluid Systems Manufacturing Management Inc., MAHLE Thermal and Fluid Systems Dayton L.L.C., and MAHLE Filter Systems North American, Inc. (collectively "MAHLE Plaintiffs") seek an *ex parte* motion for a temporary restraining order (Dkt. No. 26) requiring Defendant to (1) immediately release to MAHLE Plaintiffs certain component parts held by Defendant's customs broker, P&P Global Logistics, LLC ("P&PG"); and (2) maintain the current state of specialty tools and component parts belonging to MAHLE Plaintiffs. For the following reasons, the motion is denied in part and granted in part.

**FACTUAL BACKGROUND**

MAHLE Plaintiffs are manufacturers of intermediary appliances that are integrated into automobiles. Dkt. No. 1 ("Compl.") ¶ 1. Defendant Stark Manufacturing, LLC, is the exclusive producer of certain parts that are necessary components of MAHLE Plaintiffs' products, referred to as the "Component Parts." *Id.* ¶¶ 20, 27–28. MAHLE Plaintiffs and Defendant executed multiple contracts governing MAHLE Plaintiffs' purchase of the Component Parts. *Id.* ¶ 30. "The Component Parts are unique; they are specially manufactured and customer-made by Stark

1

Manufacturing to meet MAHLE's individual and specific requirements." Dkt. No. 7 ("Hoops. Decl.") ¶ 10. Additionally, the "Component Parts underwent extensive testing and validation to comply with the strict technical, regulatory, and safety standards applicable in the automotive industry." *Id.* Despite their importance, the MAHLE Plaintiffs do not have a stored inventory of the Component parts or another supplier who can provide them on short notice. *Id.* ¶¶ 19–20. Therefore, a delay in receiving the Component Parts will cause MAHLE Plaintiffs to cease certain of its production lines, which will have a similar effect on production lines that rely on MAHLE Plaintiffs' products. *Id.* ¶¶ 21, 23–26.

To make the Component Parts, Defendant uses tooling and equipment that is owned by MAHLE Plaintiffs. Compl. ¶ 39; Dkt. No. 19 ("Supplemental Hoops. Decl.") ¶¶ 7–10. This tooling is "highly specialized and requires ongoing maintenance to remain suitable for manufacturing MAHLE's specialized Component Parts." *Id.* ¶ 12. MAHLE Plaintiff paid for this tooling. *Id.* ¶ 9. And, under MAHLE Plaintiffs and Defendant's contracts, the tooling is included in a definition of "MAHLE Property" and MAHLE Plaintiffs have "the right to enter and inspect MAHLE Property and to demand its immediate return, at any time." *Id.* ¶ 8. At a conference that occurred on January 7, 2026, MAHLE Plaintiffs confirmed that it would pose immense difficulties for MAHLE Plaintiffs to secure new specialized tooling if those held by Defendant were damaged or lost.

Defendant seemingly had two facilities where it manufactured Component Parts: one in Arkansas, and another in Mexico. Compl. ¶ 2. MAHLE Plaintiffs owned equipment that was used at both facilities. Compl. ¶ 2 (describing equipment at the Arkansas facility as "customer-owned"); Hoops Decl. ¶ 9. Without notice to Plaintiffs, however, Defendant moved the MAHLE Property in the Arkansas facility to the Mexico facility. Compl. ¶ 2. It then notified Plaintiffs

that it was shutting down its Mexico operation. *Id.* Defendant has since stopped operation at the Mexico facility, ceased ordering raw materials, and laid off its facility workers. *Id.* ¶ 49; Supplemental Hoops Decl. ¶ 11. Despite numerous requests by Plaintiffs, Defendant has stalwartly refused to let MAHLE Plaintiffs or its agent inspect the tooling to ensure its safety and proper maintenance. Supplemental Hoops Decl. ¶¶ 8, 10–11. Defendant has offered no explanation for doing so. In tandem with this refusal, Defendant has also engaged in what MAHLE Plaintiffs describe as "erratic and bad faith conduct." *See id.* ¶ 11. This conduct centers around ongoing negotiations by which Plaintiffs are seeking to reach an agreement with Defendant under which Plaintiffs would advance Defendant funding to resume its Mexico operation and pay customs fees for certain Component Parts that MAHLE Plaintiffs already paid for and are currently being held by Defendant's customs broker, P&PG. *See* Compl. ¶¶ 50 – 73; *see generally* Dkt. No. 10 ("Coppola Decl.") (describing negotiations between Plaintiffs and Defendant). Plaintiffs advanced Defendant monies for Defendant to continue the Mexico facility's operations and pay customs fees for P&PG to deliver the Component Parts. Supplemental Hoops Decl. ¶ 11. But MAHLE Plaintiffs later learned that Defendant has used the monies for unrelated purposes. *Id.* According to MAHLE Plaintiffs, Defendant continues to refuse to permit its customs broker P&PG to deliver certain completed and paid-for Component Parts to MAHLE Plaintiffs. *Id.* ¶¶ 16–17. These Component Parts are currently located at a P&PG facility located in Texas. *Id.* Defendant also continues to refuse to permit MAHLE Plaintiffs to access or inspect its specialty equipment at the Mexico facility. Given all of this behavior, Plaintiffs have evidenced grave concerns about the security of their specialty equipment at the facility in Mexico and their ordered and paid-for Component Parts.

In response to Defendant's conduct, several plaintiffs – including MAHLE Plaintiffs – commenced this breach of contract action. Dkt. No. 1. MAHLE Plaintiffs now move for an *ex parte* temporary restraining order and preliminary injunction. Dkt. No. 26. The proposed injunctive relief would enjoin Defendant from damaging or otherwise disposing of MAHLE Plaintiff's property—including completed and paid-for Component Parts held by P&PG and specialty tooling located in the Mexico facility, and require Defendant to turn over to MAHLE Plaintiffs Component Parts that P&PG is currently holding at a facility in Texas. *Id.*

Plaintiffs include the two declarations from Andrew Hoops with the motions. The two declaration include specific facts showing that that the Component Parts and specialized tooling are highly unique products that MAHLE Plaintiffs could not replace without significant and immediate harm to their business and others. *See* Hoops Decl. ¶ 10; Supplemental Hoops Decl. ¶¶ 7–10, 12. MAHLE Plaintiffs also submitted a declaration from Laura C. Baucus indicating that MAHLE Plaintiffs have not provided Defendant notice of the motion for injunctive relief "because of the concern that advance notice would create a substantial risk that [Defendant] would sell, destroy, alter, or otherwise impair or neglect MAHLE Property." Dkt. No. 27 ("Baucus Decl.") ¶ 12.

## LEGAL BACKGROUND

An *ex parte* temporary restraining order is a form of emergency relief, appropriate "only where irreparable injury will be caused absent prompt judicial intervention in circumstances where the adversary cannot be contacted, or where advance contact with the adversary would itself is likely to trigger irreparable injury." *Little Tor Auto Ctr. v. Exxon Co., USA*, 822 F. Supp. 141, 143 (S.D.N.Y. 1993). It aims to maintain the status quo until the Court can pass on the merits of a preliminary injunction. *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l,*

*Ltd.*, 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002).  "In considering the appropriateness of a temporary restraining order, courts 'must examine whether the movant has demonstrated a threat of irreparable harm that will occur *immediately* to justify a temporary restraining order, while the temporal context of a preliminary injunction takes a longer view." *Carter v. Sewell,* No. 1:23-CV-01139 (JLR) (RWL), 2023 WL 7164304, at *1 (S.D.N.Y. Oct. 31, 2023) (quoting *Omnistone Corp. v. Cuomo*, 485 F. Supp. 3d 365, 367 (E.D.N.Y. 2020)).

A court determines whether to issue a temporary restraining order using the same standard as a preliminary injunction, *i.e.*, with reference to the *Winter* elements. *Jackson v. Johnson*, 962 F. Supp. 391, 392 (S.D.N.Y. 1997).  Accordingly, the proponent of an *ex parte* temporary restraining order must establish:

(1) that it is likely to succeed on the merits;

(2) that it is likely to suffer irreparable harm if the injunction is not granted;

(3) that the balance of the equities tip in its favor; and

(4) that the injunction serves the public interest.

*Sam Party of N.Y. v. Kosinski*, 987 F.3d 267, 273–74 (2d Cir. 2011).

Additionally, Federal Rule of Civil Procedure 65 provides that a Court may issue an *ex parte* Temporary Restraining Order without written or oral notice to a defendant only if specific facts show that "irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

## ANALYSIS

Plaintiff seeks an *ex parte* order requiring Defendant, on its own or acting through its agents, to (1) immediately release to MAHLE the Component Parts held by P&PG; and (2) preserve MAHLE's specialty tooling and paid-for Component Parts in their current state.

The Court denies the first requested relief for an *ex parte* order requiring Defendant and P&PG to release to MAHLE certain Component Parts. An order requiring Defendant to direct P&PG to immediately release the completed Component Parts is not necessary to preserve the status quo. And the Court is not prepared to require Defendant to compel P&PG to take the affirmative step of releasing Component Parts without providing Defendant (or, if necessary, P&PG) an opportunity to appear and respond in this action.

Nevertheless, the Court will grant the second requested relief for an order requiring Defendant to preserve in their current state and not destroy, damage, or otherwise dispose of MAHLE's specialty tooling located at the Mexico facility and any completed and paid-for Component Parts, including those held by P&PG at the facility in Texas.

The specialty tooling and the paid-for Component Parts are Plaintiffs' property. Supplemental Hoops Decl. ¶¶ 9, 15–16. Moreover, they are both integral to Plaintiffs' business and extremely difficult to replace within a reasonable time.

Regarding the specialty tooling equipment, Defendant suddenly spirited much of it away to its facility in Mexico without Plaintiffs' consent. Compl. ¶ 2. Defendant has—as alleged by Plaintiffs—engaged in bad faith negotiation tactics and misappropriated monies that Plaintiffs advanced for a specific purpose. *See generally* Coppola Decl.; Supplemental Hoops. Decl. ¶ 11. Defendants have, with no explanation and in violation of express contractual terms, preempted Plaintiffs from inspecting the specialty tooling to guarantee its safety. Supplemental Hoops

Decl. ¶¶ 10–11.  And—although the Component Parts held P&PG are both completed and already paid for, Defendant has refused to permit P&PG to release them to MAHLE Plaintiffs. *Id.* ¶¶ 16–17.  The above satisfies the four *Winter* elements necessary for the Court to grant injunctive relief and the standards necessary for a limited, *ex parte* temporary restraining order.

Looking at the first *Winter* element—likelihood of success on the merits, the Court determines that the MAHLE Plaintiffs are likely to succeed on their breach-of-contract claim. Plaintiffs and Defendant executed valid contracts.  The contracts between MAHLE Plaintiffs and Defendant give the MAHLE Plaintiffs a right to inspect their customer-owned equipment at Defendant's facilities.  Supplemental Hoops Decl. ¶ 8.  Nevertheless, Defendant has flatly and without explanation denied MAHLE Plaintiffs any opportunity to access or inspect their property.  *Id.* ¶¶ 10–11.  The contracts also required Defendant to deliver paid-for Component Parts to MAHLE Plaintiffs.  *Id.* ¶¶ 14–15.  Notwithstanding that obligation, Defendant is refusing to permit P&PG to release Component Parts that MAHLE Plaintiffs have already paid for.  *Id.* ¶¶ 15, 17.  This conduct violates the contracts on their face; therefore MAHLE Plaintiffs have shown a likelihood of success on the merits.

Next, MAHLE Plaintiffs are likely to suffer irreparable harm absent an immediate order requiring Defendant to maintain the specialty tooling and Component Parts.  Both are MAHLE Plaintiffs' property.  Both are integral to MAHLE Plaintiffs' business.  And both would be extremely difficult for MAHLE Plaintiffs to replace on short notice and within a reasonable time. Regarding the tooling equipment, MAHLE Plaintiffs aver that they require "ongoing maintenance to remain suitable for manufacturing MAHLE's specialized Component Parts." Supplemental Hoops Decl. ¶ 12.  Defendant spirited away certain equipment from the Arkansas facility to the Mexico one, and has since shut down the Mexico facility and laid off all its

7

workers.  Through all of this, Defendant has not provided Plaintiffs with the status of the specialty tooling equipment and what steps, if any, it is taking to maintain it.  Making matters worse, Defendant has refused to permit Plaintiffs to even inspect their property, with no explanation.  Worse still, Defendant's negotiating history creates a genuine concern that it is not taking appropriate steps to maintain this specialized equipment, thereby compromising its usefulness.  These facts together create a likelihood that—absent immediate judicial relief—the specialized tooling equipment will be damaged or lost.  This potential damage or loss would bring MAHLE Plaintiffs' relevant operations to a standstill for an unknowable amount of time.  MAHLE Plaintiffs would have to expend significant time and resources to locate entities capable of reproducing the custom tooling and conducting the necessary testing to calibrate them.  Plaintiffs would be forced to suspend their operations and sit on their hands in the interim.  This would affect not only MAHLE Plaintiffs' business, but many others that rely on MAHLE Plaintiffs' products.  The ensuing harm to MAHLE Plaintiffs' reputation among both manufacturer customers and end customers would irreparably harm Plaintiffs' businesses.

Similarly, the Component Parts are integral to MAHLE Plaintiffs' business.  Hoops Decl. ¶ 10.  Without them, MAHLE Plaintiffs will be forced to shutdown certain of its operation lines.  *Id.* ¶ 21.  This would harm MAHLE Plaintiffs' business.  It would force other operation lines that depend on MAHLE Plaintiffs' products to shut down, as well.  *Id.* ¶¶ 24–26.  Furthermore, the Component Parts are highly specialized and would be incredibly difficult for MAHLE Plaintiffs to replace in any reasonable amount of time.  *See* Hoops Decl. ¶ 10.

Third, the balance of the equities tip decisively in Plaintiffs' favor.  Requiring Defendant to maintain and preserve the specialty tooling and Component Parts imposes no burden on them beyond complying with their existing contractual obligations.  Meanwhile, absent the relief,

8

MAHLE Plaintiffs could lose their property forever, with likely calamitous effects on their businesses.

Fourth and last, the public interest accords with issuing the relief. Defendant is in breach of contract by refusing to permit MAHLE Plaintiffs to inspect the specialty tooling and withholding the Component Parts. If the specialty tooling or Component Parts are lost, MAHLE Plaintiffs will need to pause operations, harming their business in the near term and potentially laying off workers. This would then precipitate pauses in other vehicle assembly lines that depend on Plaintiffs' products, causing further harm.

Additionally, this case meets the supplemental requirements for the Court to issue an *ex parte* temporary restraining order. Requiring Defendant to maintain the specialty tooling and Component Parts owed by MAHLE Plaintiffs preserves the status quo until the Court may hear from Defendant. MAHLE Plaintiffs have also submitted declarations including specific facts why the order is necessary to prevent irreparable harm, Hoops Decl. ¶¶ 10, 24–26; Supplemental Hoops Decl. ¶¶ 10–13, and why notice to the Defendant should not be required, Baucus Decl. ¶ 12.[1]

## ORDER

Accordingly, is it hereby ORDERED that:

(1) Defendant and its agents preserve and take reasonable steps necessary to prevent any damage, harm, alteration, or loss to the specialty tooling equipment or "Tooling" described in the Declaration of Andrew Hoops dated January 7, 2026 (Dkt. No. 19) owed by MAHLE Plaintiffs. *See* Dkt. No. 19 ¶¶ 5, 9. Likewise, Defendant is enjoined from selling or otherwise disposing of the Tooling.

---

[1] The Court also states the following per Federal Rule of Civil Procedure 65(b)(2). The injury to Plaintiffs is the likelihood that Defendant will damage or fail to preserve Plaintiffs' specialty tooling equipment and its Component Parts. This Order is issued without notice to reduce the possibility that any harm will come to Plaintiffs' property, which would irreparably harm their businesses.

9

(2) Defendant and its agent preserve and take reasonable steps necessary to prevent damage, harm, alteration, or loss to the Component Parts manufactured for MAHLE Plaintiffs and paid-for by them, including the Component Parts currently being held by P&PG in Texas. Supplemental Hoops Decl. ¶ 15. Likewise, Defendant is enjoined from selling or otherwise disposing of the Component Parts, other than releasing them to the custody of the MAHLE Plaintiffs.

(3) This order shall expire within six (6) days from entry or until modified or dissolved, whichever comes earlier.

(4) Plaintiffs serve a copy of this order on Defendant and its counsel both by email and by a mail delivery service that provides delivery confirmation.

(5) Plaintiffs promptly file proof of email service and the delivery confirmation for mail service.

(6) Consistent with Federal Rule of Civil Procedure 65(b)(3), all parties appear before the Court for a preliminary injunction hearing on **Wednesday, January 14, 2026, at 10:00 a.m.** The Conference will be conducted via Microsoft Teams. The public one-touch dial-in for the conference audio is: +1 646-453-4442,,229572950#. Counsel of record will receive a direct Microsoft Teams link via email in advance of the conference.

Defendant may submit any briefing to the Court on or before **12:00 p.m.** on **Tuesday, January 13, 2026**.

Dated: January 9, 2026, 4:10 p.m.
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge